**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

STATE OF FLORIDA, et al.,

    Plaintiffs,

v.     Case No. 8:24-cv-317-WFJ-AAS

CENTERS FOR MEDICARE AND
MEDICAID SERVICES, et al.,

    Defendants.
_____/

## ORDER

Before the Court is Plaintiffs State of Florida and Florida Agency for Health Care Administration's (collectively, "Florida") Motion for Preliminary Injunction (Dkt. 2). Defendants Centers for Medicare and Medicaid Services, Department of Health and Human Services, Administrator for the Centers for Medicare and Medicaid Services, and Secretary of the Department of Health and Human Services (collectively, "CMS") have responded (Dkt. 22), and Florida has replied (Dkt. 23). On April 18, 2024, the Court held a hearing on this matter (Dkt. S-30). Upon careful consideration, and with the benefit of able argument by both sides, the Court denies Florida's Motion. The Court lacks subject-matter jurisdiction over this dispute due to the statutory review scheme contained in 42 U.S.C. § 1316. The instant case is dismissed without prejudice.

## BACKGROUND

### I.     Medicaid and CHIP

Medicaid and CHIP are joint federal-state programs that enable states to extend medical coverage to low-income individuals under Title XIX (Medicaid) and Title XXI (CHIP) of the Social Security Act. 42 U.S.C § 1396, *et. seq.*; *id.* § 1397aa, *et. seq.* To participate in either, each state must create a specific plan that fulfills the conditions specified in 42 U.S.C. § 1396a(a) or 42 U.S.C. §§ 1397aa–1397bb and submit the plan for approval. *Id.* § 1396a(b); *id.* §1397ff(a)–(c); 42 C.F.R. § 457.150(a)–(c). Upon approval, states administer their plans, and the federal government provides funding to help defray costs. A state dissatisfied with a determination concerning whether "a State plan . . . submitted . . . for approval" conforms to federal requirements can request reconsideration and a hearing, and can ultimately petition a U.S. Court of Appeals for review. 42 U.S.C. § 1316(a)(1)–(3), (b); *see id.* § 1397gg(e)(2)(B) (incorporating 42 U.S.C. § 1316).

Despite this overlap, Medicaid and CHIP are distinct programs. CHIP specifically aims to provide subsidized health insurance to children in low-income families who do not qualify for free health coverage under Medicaid. 42 U.S.C. §§ 1397aa–1397bb; *see also id.* § 1396o(a)(1), (2)(A). Per the statute, "[n]othing" in CHIP is to "be construed as providing an individual with an entitlement to child health assistance under a State [CHIP] plan." *Id.* § 1397bb(b)(5). States may

2

require "premiums, deductibles, coinsurance, and other cost sharing" as a condition of enrollment in CHIP. *Id.* § 1397cc(e)(1)(A); 42 C.F.R. § 457.510. States can also disenroll CHIP participants for nonpayment of premiums if the state provides sufficient notice and a grace period for late payments. *See* 42 U.S.C. § 1397cc(e)(3)(C); 42 C.F.R. §§ 457.342(b), 457.570.

## II. Continuous Eligibility under Medicaid and CHIP

Prior to January 1, 2024, Title XIX gave states the option to provide children with twelve months of "continuous eligibility" for Medicaid. 42 U.S.C. § 1396a(e)(12) (2022). A child "determined to be eligible for benefits" would thereby remain "eligible" for twelve months even if the child's circumstances changed in a way that would otherwise render the child ineligible. *Id.* Under CMS regulation, states also had the option to provide continuous eligibility to CHIP participants under Title XXI. 42 C.F.R. § 457.342(a); *see* 81 Fed. Reg. 86382, 86464 (Nov. 30, 2016) (adding 42 C.F.R. § 457.342).

CMS regulations previously provided five exceptions to continuous eligibility for Medicaid: (1) "[t]he child attains the maximum age specified"; (2) "[t]he child or child's representative requests a voluntary termination of eligibility"; (3) "[t]he child ceases to be a resident of the State"; (4) the state "determines that eligibility was erroneously granted"; or (5) "[t]he child dies." 42 C.F.R. § 435.926(d). CMS regulation incorporated these exceptions for the CHIP

3

continuous eligibility option as well, while also providing that CHIP participants may "be terminated during the continuous eligibility period for failure to pay required premiums or enrollment fees." *Id.* § 457.342(b).

This optional system was changed by the Consolidated Appropriations Act of 2023 ("2023 CAA"), which itself amended the Social Security Act. It is now required that "an individual who is under the age of 19 and who is determined to be eligible for benefits under a State [Medicaid] plan . . . remain eligible for such benefits" for twelve-months following the eligibility determination unless the individual "attains the age of 19" or "ceases to be a resident of such State." Pub. L. No. 117-328, § 5112(a), 136 Stat. 4459, 5940 (2022) (amending 42 U.S.C. § 1396a(e)(12)). Congress made the same requirement applicable to CHIP by reference in 42 U.S.C. § 1397gg(e)(1). *See* Pub. L. No. 117-328, § 5112(b), 136 Stat. at 5940 (amending 42 U.S.C. § 1397gg(e)(1)(K)). Still, the 2023 CAA amendments did not discuss CHIP *enrollment* for CHIP *eligible* children.

### III. Florida CHIP

In 1990, approximately seven years prior to the enactment of CHIP, Florida began a demonstration project under the Omnibus Budget Reconciliation Act of 1989, Pub. L. No. 101-239, § 6407, 103 Stat. 2106, 2266 (1989). This program offered subsidized health insurance to children in low-income families, and Congress later grandfathered it into CHIP. 42 U.S.C. § 1397cc(a)(3), (d)(1). At this

4

time, Florida required premium payments for CHIP enrollment. Dkt. 2-2 at 85. It also allowed for a period of continuous eligibility, meaning that eligible participants could be disenrolled from Florida CHIP for non-payment of premiums while retaining their eligible status.

Florida CHIP still requires monthly premiums. *Id.* at 24–25, 178–79. Florida claims that it collects approximately $30 million in annual premium payments and that cost-sharing is vital to the sustainability and expansion of its CHIP program. Florida also maintains that CHIP cost-sharing enables it to meet the balanced budget requirement of the Florida Constitution. *Id.* at 8 (citing Fla. Const. art. III, § 19(a); *id.* art. VII, § 1(d)); *see* Dkt. 2-1 (Noll Declaration) at 3, ¶ 4; Staff of Florida H.R. Health Care Servs. Comm., *Review of the Implementation of the Florida KidCare Act* 7–8 (Sept. 1999), http://www.leg.state.fl.us/data/Publications/ 2000/House/reports/interim_reports/pdf/kidcare.pdf. Finally, Florida interprets its law as requiring the disenrollment of CHIP participants for failure to pay premiums even where a CHIP participant is in a period of continuous eligibility. *See* Fla. Stat. §§ 409.8132(8), 624.91(5)(b)(9).

## IV. The State Health Official ("SHO") Letter and FAQs

In light of the 2023 CAA amendments, on September 29, 2023, CMS issued a SHO Letter partially concerning continuous eligibility requirements for Medicaid and CHIP participants. Dkt. 2-3 at 4–6. While the 2023 CAA amendments

5

explicitly provide for only two exceptions to continuous eligibility—attaining the age of 19 or ceasing to be a resident of the subject state—the SHO Letter instructed states that they were "expected to" continue terminating Medicaid and CHIP eligibility during continuous eligibility periods for all five reasons previously specified in regulation. *Id.* at 5–6; 42 C.F.R. §§ 435.926(d), 457.342(b). CMS was, however, "still assessing how non-payment of premiums intersects with [continuous eligibility] under the CAA." Dkt. 2-3 at 5 n.14.

CMS issued the FAQs one month later. Dkt. 2-4. The first question asked was whether "[S]tates [may still] terminate CHIP coverage during a continuous eligibility (CE) period due to non-payment of premiums?" *Id.* at 2. CMS answered "No." *Id.* The FAQs noted that "[t]here is not an exception to [continuous eligibility] for non-payment of premiums" under the 2023 CAA amendments; accordingly, the "existing regulatory option at 42 CFR § 457.342(b) for states operating a separate CHIP to consider non-payment of premiums as an exception to [continuous eligibility] [was to] end on December 31, 2023." *Id.*

V. **The Instant Lawsuit**

On February 1, 2024, Florida sued CMS. Florida argues that FAQs violate the Administrative Procedure Act ("APA") because they are: (1) contrary to law; (2) in excess of CMS's authority in implementing the 2023 CAA amendments; and (3) arbitrary and capricious. Dkt. 1 at 28–37. Florida also argues that the FAQs—a

legislative rule that allegedly confuses *eligibility* and *enrollment*—can only be issued through notice-and-comment rulemaking. Florida now moves for a preliminary injunction preventing CMS from enforcing the FAQs. Dkt. 2.

CMS responds that: (1) Florida's claims are not ripe for adjudication; (2) the Social Security Act impliedly precludes district court jurisdiction; (3) the FAQs are mandated by the 2023 CAA amendments; (4) the FAQs are an interpretive rule exempt from APA rulemaking requirements; (5) Florida does not face irreparable harm; and (6) the equities do not favor injunctive relief. *See generally* Dkt. 22.

## LEGAL STANDARD

To obtain a preliminary injunction concerning the enforcement of the FAQs, Florida must show that: "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc). "The first two factors are 'the most critical.'" *Swain v. Junior*, 958 F.3d 1081, 1088 (11th Cir. 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). Further, "the third and fourth factors [tend to] merge when, as here, the government is the opposing party." *Gonzalez v. Governor of Georgia*, 978 F.3d 1266, 1271 (11th Cir. 2020) (cleaned up) (citations omitted).

## DISCUSSION

### I.      Jurisdiction

CMS argues that 42 U.S.C. § 1316 impliedly precludes district court jurisdiction over the instant dispute. The Court agrees and will therefore not address the merits or CMS's ripeness arguments.

#### i.      Implied Preclusion

District courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Sometimes, however, "[a] special statutory review scheme . . . may preclude district courts from exercising jurisdiction over challenges to federal agency action." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 185 (2023). In these situations, "[t]he agency fills in for the district court, with the court of appeals providing judicial review." *Id.* at 185.

The first implied preclusion issue to consider is whether Congress has created a "comprehensive review process . . . that oust[s] district court jurisdiction" over challenges to CMS action. *Id.* at 186 (citing *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 208 (1994)). Contrary to Florida's suggestions, this is a preliminary question focused on whether there is a valid statutory review scheme that provides for some level of exclusive agency review. It is not a means of avoiding or diminishing the central considerations posed by implied preclusion caselaw. *See Elgin v. Dep't of Treasury*, 567 U.S. 1, 9–18 (2012) (addressing the existence and

8

validity of an exclusive statutory review scheme before going on to consider whether the particular claims brought were of the type Congress intended to be reviewed within that scheme under the *Thunder Basin* factors); *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 489–92 (2010) (same); *Thunder Basin*, 510 U.S. at 207–16 (same); *Axon Enter.*, 598 U.S. at 185–96 (same).

A valid and comprehensive review process undoubtedly exists here. 42 U.S.C. § 1316(a)(1), made applicable to CHIP through 42 U.S.C. §1397gg(e)(2), provides for administrate review of state CHIP plans. "Any State dissatisfied with a determination [by CMS]" may "file a petition with [CMS] for reconsideration of the issue of whether such plan conforms to the requirements for approval under [CHIP]." 42 U.S.C. § 1316(a)(2). And, "[a]ny State which is dissatisfied with a final determination made by [CMS] on such a reconsideration or final determination" may petition for review in the appropriate circuit court. *Id.* § 1316(a)(3). Florida does not contest the constitutionality of this statutory scheme or the fact that it provides for some level of exclusive agency review of CMS action. Nor could it—the Supreme Court has routinely held similar statutory schemes valid. The Court sees no reason to treat 42 U.S.C. § 1316 differently.

The next issue, and the heart of the implied preclusion inquiry, is "whether the particular claims brought [are] 'of the type congress intended to be reviewed'" under 42 U.S.C. § 1316. *Axon Enter.*, 598 U.S. at 186 (quoting *Thunder Basin*, 510

9

U.S. at 208). The Supreme Court has identified three factors to consider in making this determination: (1) "could precluding district court jurisdiction foreclose all meaningful judicial review of the claim"; (2) "is the claim wholly collateral to the statute's review provisions"; and (3) "is the claim outside of the agency's expertise[.]" *Axon Enter.*, 598 U.S. at 186. "The ultimate question is how best to understand what Congress has done—whether the statutory review scheme, though exclusive where it applies, reaches the claim[s] in question." *Id.*

Precluding district court jurisdiction would not rule out all meaningful judicial review of Florida's claims. Like the statutes in *Thunder Basin* and *Elgin*, 42 U.S.C. § 1316 "does not foreclose all judicial review . . . but merely directs that judicial review shall occur [at the appellate court level]." *Elgin*, 567 U.S. at 10. There is no indication that the Eleventh Circuit is incapable of meaningfully reviewing Florida's APA claims. At least one other federal circuit, moreover, has already reviewed APA claims under 42 U.S.C. § 1316 which came on appeal from a final CMS determination. *See W. Virginia v. Thompson*, 475 F.3d 204, 209–14 (4th Cir. 2007) (reviewing appeal of final CMS determination that was, among other things, allegedly violative of 5 U.S.C. § 706(2)(A)). The Court finds such review to be adequate, just as other courts have in the past. *See New York v. U.S. Dept. of Health & Human Services*, 07 CIV.8621 (PAC), 2008 WL 5211000, at *16 (S.D.N.Y. Dec. 15, 2008) (finding that 42 U.S.C. § 1316 did not foreclose

10

meaningful judicial review of the plaintiffs' APA claims); *see also Axon Enter.*, 598 U.S. at 190 (noting that "*Thunder Basin* and *Elgin* both make clear that adequate judicial review does not usually demand a district court's involvement").

Florida's cannot avoid this conclusion by reference to the injury it might suffer from "betting the farm" on a decision to ignore the FAQs. In *Axon*, the Supreme Court took care to emphasize the importance of limiting exceptions to statutory review schemes which are based on the "the interaction between the alleged injury and the timing of review." 598 U.S. at 191. The majority elaborated on this limit by juxtaposing two categories of injuries. On one hand, there are injuries like those alleged by the *Axon* plaintiffs. These "here-and-now" injuries include subjection to illegitimate proceedings led by an illegitimate decisionmaker and can be synonymized with a violation of established immunity rights. *Id.* at 192. They would exist even if the claimants "won before the agency" because they have nothing to do with a particular agency action. And they cannot be redressed on appeal or any time after the agency proceedings have begun. *Id.* at 191–92. On the other hand, there are the types of injuries that "could have" been argued by the *Thunder Basin* and *Elgin* plaintiffs. *Id.* at 192. These include "greater litigation costs" and the "expense and disruption of protracted adjudicatory proceedings." *Id.* (citations and internal quotations omitted). Unlike the former category of injuries which stem from structural constitutional challenges, this latter category does "not

11

justify immediate review." *Id.* Such injuries are dependent on the outcome of agency proceedings or "other decisions made within it," and do not interact with the timing of agency review so as to preclude later, meaningful judicial review. *Id.*

Florida's asserted potential "bet the farm" injury does not belong in the category of injuries that justify immediate district court intervention. It is important to recognize that "betting the farm" in this context equates to betting some amount of access to arguably unrecoverable federal funding for Florida's CHIP program. Such a loss is wholly dependent on the outcome of a lengthy administrative review process that culminates in review by the Eleventh Circuit. Florida's claims, furthermore, do not invoke the type of structural constructional concerns that might result in here-and-now injuries sufficient to synonymize Florida with the *Axon* plaintiffs. They instead focus on potential CMS action—something that Congress provided an alternative review scheme for by way of 42 U.S.C. § 1316.

*Free Enterprise Fund* does not change the Court's analysis. There, among other things, the plaintiffs argued that the Serbanes-Oxley Act (the basis of the defendant agency's authority) "contravened the separation of powers by conferring wide-ranging executive power on Board members without subjecting them to Presidential control." *Free Enter. Fund*, 561 U.S. at 487. This is precisely the type of constitutional claim that the *Axon* majority differentiated from the types of claims brought by Florida. These claims result in potential here-and-now injuries

independent of any outcome because they challenge structural legitimacy and imply a right not to be subjected to actions and proceedings at all. It follows that Florida is comparing apples and oranges. Its potential "bet the farm" injuries are financial in nature and founded on claims that do not focus on inherent constitutional deficiencies.

Florida also cites *Free Enterprise Fund* out of context. While courts "normally do not require plaintiffs to bet the farm . . . by taking violative action before testing the validity of the law," *id.* at 490 (citations and internal quotations omitted), this Order would merely require Florida to do what all states must do in order to receive or retain federal CHIP funding—submit their CHIP plan to CMS and allow CMS to review it before seeking judicial review. In *Free Enterprise Fund*, by contrast, the Supreme Court found unreasonable the idea that the plaintiffs should go out of their way to incur an unrelated sanction simply to supplement "an uncomplimentary inspection report" that was itself not reviewable. *Id.* Requiring individuals to purposefully break rules and subject themselves to costly fines cannot be fairly compared with requiring a state to follow established statutory and regulatory procedures. Florida can seek and obtain meaningful judicial review of its APA claims under 42 U.S.C. § 1316.

The next sub-issue is whether Florida's claims are wholly collateral to the statute's review provisions. They are not. Florida's only argument to the contrary

13

is that CMS has made no "determination;" and thus, there is nothing to review under 42 U.S.C. § 1316. The problem with this argument is obvious. Florida "cannot avoid the statutorily established administrative-review process by rushing to the federal courthouse for an injunction preventing the very action that would set the administrative-review process in motion." *Doe v. F.A.A.*, 432 F.3d 1259, 1263 (11th Cir. 2005). This is, however, precisely what Florida seeks to do by having the Court enter an injunction to bar CMS from enforcing the FAQs' interpretation of the 2023 CAA amendments against it.

If there is any doubt as to this point, one need only take a closer look at *Doe*. There, the Eleventh Circuit explained the pertinent facts as follows:

> After an investigation revealed (and a subsequent criminal trial confirmed beyond a reasonable doubt) that the school from which the Plaintiffs received their airmen certificates fraudulently examined and certified some applicants for those certificates, the FAA concluded that the existence of aircraft mechanics unqualified to hold certificates and perform aircraft maintenance posed a serious threat to air safety. The FAA was unable to determine which of the mechanics who received their certificates from the implicated school had been fraudulently certified. Therefore, the FAA wrote letters to the Plaintiffs (and approximately 2,000 other mechanics who had been certified at the school during the relevant time period) stating that reexamination of their airmen competency was necessary under 49 U.S.C. § 44709. The FAA took no action to suspend or revoke the mechanics' certificates. Rather than submitting to reexamination or refusing reexamination, thereby risking an FAA order suspending or revoking their certificates, the Plaintiffs filed this action in federal district court and sought a preliminary injunction instructing the FAA how to proceed in its process of reexamination.

14

*Id.* at 1260. The facts in this case are remarkably similar. CMS released the FAQs and requested amended CHIP plans from states that treated nonpayment of premiums as an exception to continuous eligibility. Dkt. 2-4 at 2. Rather than submitting an amended plan or risking an adverse determination, Florida filed this action in federal court seeking a preliminary injunction. This Florida cannot do. Further, no reasonable statutory interpretation could result in a finding that CHIP plan compliance is wholly collateral to the review provisions of 42 U.S.C. § 1316.[1]

Florida's claims are also not outside CMS's expertise. It is undisputed that any analysis of Florida's APA claims will largely turn on properly interpreting the Medicaid and CHIP statutes. Interpretation of these statutes falls squarely within CMS's realm of expertise, especially considering Medicaid and CHIP's recognized complexities. *See Thompson*, 475 F.3d at 212 (explaining that "[t]he Medicaid statute is a prototypical 'complex and highly technical regulatory program' benefitting from expert administration, which makes deference particularly warranted") (citation omitted). Indeed, Florida does not claim "that tenure protections violate Article II," *Axon Enter.*, 598 U.S. at 194, or "object[] to "[CMS's] existence," *Free Enter. Fund*, 561 U.S. at 490. The Court has little doubt

---

[1] The Court also notes that the Supreme Court has found some APA challenges to be "inextricably intertwined" with challenges to specific agency determinations. *Heckler v. Ringer*, 466 U.S. 602, 614 (1984) (finding the plaintiff's APA challenge to be inextricably intertwined with her claim concerning the invalidity of an agency determination about whether a certain surgery is reimbursable under Medicare). This is all the more reason to find that Florida's claims are not "wholly collateral," if collateral at all, to the review provisions in 42 U.S.C. § 1316.

15

that "exclusive review before [CMS] is appropriate" and that "agency expertise could be brought to bear on" Florida's claims. *Thunder Basin*, 510 U.S. at 215 (internal quotations and citations omitted) (cleaned up).

In sum, Congress's intent to allocate initial review of Florida's claims to CMS is "fairly discernable in [42 U.S.C. § 1316]." *Id.* at 207. The Court consequently lacks subject-matter jurisdiction over Florida's claims and dismisses this case without prejudice. *See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) ("A dismissal for lack of subject-matter jurisdiction . . . is entered without prejudice.") (cleaned up).

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED:**

(1) Florida's Motion for Preliminary Injunction (Dkt. 2) is **DENIED**.

(2) This case is **DISMISSED WITHOUT PREJUDICE**.

**DONE AND ORDERED** at Tampa, Florida, on May 31, 2024.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record